USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____4/28/2026_____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
ARCH SPECIALTY INSURANCE COMPANY,

                      Plaintiff,

         -against-

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA and THE
CHARTER OAK FIRE INSURANCE
COMPANY.,

                    Defendants.
-------------------------------------------------------------------X

**24-CV-7712 (KHP)**

**OPINON & ORDER ON MOTION**
**FOR SUMMARY JUDGMENT**

**KATHARINE H. PARKER, United States Magistrate Judge:**

This case stems from a renovation project at a mixed-use apartment building at 141 East 88th Street in Manhattan, New York, and its conversion into a condominium. (ECF No. 56, at 1–2, 6).  141 East 88th Street, LLC ("E88") was the sponsor and developer of the project. (ECF No. 54, at 1–2)*.*  The parties, two insurers, have a dispute about who is responsible for paying defense costs in a litigation brought in New York State court related to property damages arising from the construction on the conversion project.  Before the Court are the parties' cross-motions for summary judgment.  For the reasons set forth below, Plaintiff's motion is granted and Defendants' cross-motion is denied.

## FACTS

**I.  The Construction Project and Underlying State Court Action**

There are no material facts in dispute.  The conversion project for the building included the renovation of the building's apartments, the expansion of three apartments into duplex penthouses, the addition of two new duplex penthouses, and other renovations. *Id.* at 1.  The project commenced in or about April 2012 and was completed in or around June 2013, with the

first condominium unit being sold a month later. *Id.* Tekton Builders, LLC ("Tekton") was the general contractor on the project. (ECF No. 61, at 1–2). Metal and Glass Solutions Putnam LLC ("M&G") was a subcontractor on the project responsible for metal wall panel and building envelope work, as well as work on aluminum windows, doors, and glazing. *Id.* at 2. The contract between Tekton and M&G (the "M&G Contract") required M&G to procure insurance covering E88 (defined as the "Owner" in the contract) as an additional insured. (ECF No. 56-5, at 6). Under the contract, M&G's insurance was required to include an endorsement that "[t]his insurance shall be primary without right of contribution of any other insurance, whether primary or excess, carried by or on behalf of all Additional Insureds with respect to the work performed under this Subcontract/Vendor Agreement." *Id*. at 5. M&G complied with this provision and named E88 as an additional insured under its policies with Travelers. (ECF No. 54, at 2).

Upon completion of the construction and sale of the units, the building's unit owners formed a condominium board (the "Board") to be the governing body for the building. *Id.* at 2. Unfortunately, not long after the completion of the project it became apparent there were defects in the construction work, because multiple unit owners experienced significant and repeated water infiltration into their units. (ECF Nos. 54, at 6; 56, at 1–2; 61, at 9). The Board brought suit in New York State Supreme Court against E88 (the "underlying action") and various other persons and entities associated with the project, who in turn brought a third-party complaint against Tekton and several other entities, including M&G, on the theory their work was defective, resulting in the property damage. (ECF Nos. 56, at 1–2; 61, at 8; 57). Improperly

2

designed and installed exterior metal panel system and insufficient metal stud framing, non-compliant metal coping assembly, improper application of waterproofing system on the terraces, and installation of defective windows are mentioned in the pleadings as potentially contributing to the water leakage and resulting property damage. (ECF No 57-3, ¶ 67).

Plaintiff Arch Specialty Insurance Company ("Arch"), E88's insurer, began paying E88's defense costs in the state court action in or about September 2019. (ECF Nos. 54, at 2; 56-12). Defendant Travelers Property Casualty Company of America and its affiliate, The Charter Oak Fire Insurance Company (together, "Travelers"), M&G's insurer, began paying certain defense costs in November 2022, but refused to pay the defense costs Arch incurred on behalf of E88 prior to that date. *Id.* at 6–7.

Arch seeks a declaration that its coverage of E88 is in excess of Travelers's primary coverage and that Travelers's primary duty to defend E88 began on August 26, 2020, when E88 first sought to tender its defense to Travelers according to M&G's insurance policies. (ECF No. 52, at 15).  At issue is $231,913.61 in past defense costs that Arch paid on E88's behalf. Travelers's counterclaims seek a declaration that Arch is obligated to defend E88 on a primary basis and, at a minimum, must share equally with Travelers in the defense costs of the underlying state court action. (ECF No. 55, at 12–13).  Travelers seeks reimbursement for at least 50 percent of amounts it has paid thus far and until Arch reassumes its defense. *Id.*

## II.  The Travelers Policies

M&G procured two Commercial General Liability ("CGL") policies from Travelers. (ECF No. 54, at 2).  The policies cover a total period from July 10, 2014 to August 10, 2015 (the

"Travelers Policies"). *Id.* at 4.  The provisional premium was $16,377.70, and the policies had a $1,000,000 coverage limit per occurrence.[1] (ECF No. 53-1, at 51, 53)*.*  The Travelers Policies cover sums the insured becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence." *Id.* at 124.  The property damage must occur during the policy period to be covered. *Id.*  The policies define "property damage" as follows:

> a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it. *Id.* at 138.

An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," and "your work" is defined as "[w]ork or operations performed by you or on your behalf . . . ." *Id.*  This coverage includes a "duty to defend the insured against any 'suit' seeking damages for . . . 'property damage.'" *Id.* at 124.

The Travelers Policies also include endorsements.  One endorsement, the "Blanket Additional Insured-Owners, Lessees or Contractors Endorsement" (the "Blanket AI Endorsement"), defines who is insured under the policies. *Id.* at 212.  The Blanket AI Endorsement states the following:

> any person or organizations (called hereafter 'additional insured') whom you have agreed in a written contract, executed prior to loss, to name as additional insured, but only with respect to liability arising out of 'your work' or your ongoing operations for that additional insured performed by you or for you. *Id.*

---

[1] The policies were renewed on April 29, 2015 for a policy period from July 10, 2015 to July 10, 2016. (ECF No. 53-1, at 3). The provisional premium for this renewal was $15,691.22.

This endorsement also states that with respect to "Additional Insureds," certain conditions applied, including that "[t]his insurance is excess over any valid and collectible insurance *unless you have agreed in a written contract for this insurance to apply on a primary or contributory basis*." *Id.* (emphasis added). In a November 2022 letter to Arch, Travelers stated that "[t]his endorsement provides additional insured coverage to the entity M&G Solutions agrees to include as an additional insured in a 'written contract requiring insurance.'" (ECF No 53-5, at 3). Another endorsement, the "Other Insurance-Additional Insureds" endorsement, provides that "if [M&G] specifically agree[s] in a written contract or written agreement that the insurance provided to an additional insured under *this Coverage Part must apply on a primary basis* . . . *this insurance is primary to the other insurance that is available*." (ECF No. 53-1, at 149) (emphasis added).  The Travelers Policies also included an "other insurance" clause, designating the coverage as primary. *Id.* at 134.

### III.  The Arch Policy

On or around June 26, 2014, Arch issued a products-completed operations liability policy (the "Arch Policy") to named insured E88, with a limit of $1,000,000 per occurrence for certain "property damage" arising out of the project. (ECF 56-2 at 1)*.*  The premium was $154,000. *Id.* at 2.  The policy extends coverage to sums that E88 becomes legally obligated to pay as damages because of property damage caused by an "occurrence." *Id.* at 4.  Arch also took on the duty to defend the insured against any such suit. *Id.*  The policy covered the renovation project and all construction operations performed by Tekton and its subcontractors.

(ECF No. 56-3, at 33).  The Arch Policy defines "property damage" the same way as the Travelers Policies:

> a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it. (ECF No. 56-2, at 22–23).

Likewise, it contains the same definition of "occurrence" as the Travelers Policies. *Id.* at 22.  The policy also specifies that "property damage" must "occur during the policy period" to be covered. *Id.* at 4.  The policy period was originally from June 26, 2014 to June 27, 2014, but coverage was extended for liability within the "products-completed operations hazard." (ECF Nos. 54, at 2; 56-2, at 1).

The Arch Policy defines "products-completed operations hazard" in pertinent part as all "'property damage' arising out of 'your product' or 'your work' except:  (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned." (ECF No. 53-14, at 22, 33)*.*  Under the Arch Policy, the work was deemed completed as of June 2013. *Id.* at 33.  The coverage extension period is "equal to the applicable statute of limitations for any claim or 'suit' for such . . . 'property damage' as provided by the controlling law. . . ." *Id.* at 34.  The Arch Policy also includes an "other insurance" clause, designating the Arch coverage as "excess." *Id.* at 17–18.

## IV.  The Defense of E88

On August 26, 2020, counsel for E88 sent a letter to Travelers requesting that Travelers defend it in the underlying action. (ECF No. 54, at 6).  Travelers agreed to defend E88 on

November 3, 2022, and has paid approximately $677,156 doing so. *Id.* at 6–7.  On December 28, 2022, upon receipt of Traveler's November 2022 letter, Arch sent a letter to Travelers requesting reimbursement of defense expenses incurred from August 26, 2020, to November 3, 2022, totaling $231,913.61. (ECF No. 56-12).  Arch provided a summary of the invoices in the letter and provided more copies upon request in February 2023. (*Id.*; ECF No. 56-13).  However, in May 2023, Travelers sent a letter to Arch offering to pay only 11 percent of E88's defense costs. (ECF No. 53-8, at 7).  Arch's further requests for reimbursement went unanswered, and Arch commenced this action on October 10, 2024. (ECF Nos. 6; 56-17).

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might "affect the outcome of the litigation under the governing law." *Id.* (quoting *Miner v. Clinton Cnty, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)).  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v.*

7

*Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotations omitted). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elect. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467–68 (S.D.N.Y. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)). When interpreting a contract, the language must be wholly unambiguous for summary judgment to be proper. *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 257 (2d Cir. 2002).

The same legal standard applies when analyzing cross-motions for summary judgment. *Schultz v. Stoner*, 308 F. Supp. 2d 289, 298 (S.D.N.Y. 2004) (quoting *Aviall, Inc. v. Ryder Sys., Inc.*, 913 F. Supp. 826, 828 (S.D.N.Y. 1996)). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)

(quoting *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).  The Court is not required to grant summary judgment in favor of either moving party. *Id.* (citing *Heublein Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).

## DISCUSSION

In this case, both the Arch Policy and the Travelers Policies insure against suits for property damage.  The parties agree New York law applies.  Under New York law, "[w]here the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage, priority of coverage . . . among policies is determined by" comparing the policies' "other insurance" clauses. *Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, Pa.*, 878 N.Y.S.2d 339, 344 (N.Y. App. Div. 2009).  The Court determines if the policies cover the "same risk" by first looking at the policy language. *Allstate Ins. Co. v. Hartford Ins. Co. of the Midwest*, No. 17 Civ 7553, 2019 WL 3066491, at *3 (S.D.N.Y. July 12, 2019).  If both policies cover the "same risk," then the "other insurance" clauses determine the priority of coverage—i.e., which policy has primary obligation to advance defense costs. *Id.; see also First Mercury Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, No. 650065/2018, slip op. at 10 (N.Y. Sup. Ct. Oct. 29, 2019) (stating that in determining the relationship between two insurance policies the court looks to the relevant policies themselves); *Greater N.Y. Mut. Ins. Co. v. State Nat'l Ins. Co.*, No. 155444/16, slip op. at 8 (N.Y. Sup. Ct. Dec. 6, 2019) (looking first to the language of the policy).

### I.  Same Risk

Travelers argues that the Arch Policy and Travelers Policies do not insure the same risk, rendering the "other insurance" clauses inapplicable.  This argument is not persuasive.  "Same

9

risk" is defined broadly where the same interest is covered. *Compare Sport* Rock, 878 N.Y.S.2d at 350 (finding that where two policies covered the insured for "bodily injury," they covered the same risk regardless of a difference in scope); *Fieldston Prop. Owners Assoc. v. Hermitage Ins. Co.*, 16 N.Y.3d 264 (2011) (holding that where two parties conceded the possibility that both policies covered "injurious falsehood claims," the other insurance clauses did apply), *with Pa. Mfrs. Ass'n Ins. Co. v. Liberty Mut. Ins. Co.*, 39 A.D.3d 1161, 1161–62 (N.Y. App. Div. 2007) (holding that where one policy covered painting operations and the other covered inspecting operations, the policies did not cover the same risk).  In the context of an insurer's duty to defend, the "interest" is defense of the underlying action for alleged property damage, and the two policies need only be triggered by the same underlying legal action. *Beazley Ins. Co., Inc. v. Ace Am. Ins. Co.*, 150 F. Supp. 3d 345, 357–58 (S.D.N.Y. 2015); *Travelers Prop. & Cas. Co. of Am. v. Clear Blue Ins. Co.*, No. 21 Civ 4721, 2024 WL 4216018, at *11 (S.D.N.Y. Sept. 17, 2024).

The policies in this case cover the "same risk."  Both the Arch Policy and the Travelers Policies cover E88's (the insured's) defense in suits for property damage arising from M&G's work. (ECF Nos. 53-1, at 124; 56-2, at 4).  The Arch Policy states that it will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' . . . [and that it has] the right and duty to defend the insured against any 'suit' seeking those damages." (ECF No 56-2, at 5).  The Travelers Policies state the same, providing general liability coverage for "damages because of 'bodily injury' or 'property damage'" and "the right and duty to defend the insured against any 'suit' seeking those damages." (ECF No. 56-4, at 124).  The policies define "property damage" with identical language. (ECF Nos. 56-4, at 138;

56-2, at 22–23).  This language is unambiguous, and, under New York's broad standard, these

policies cover the "same risk" and interest with respect to the duty to defend.

The fact that the two policies cover different but overlapping periods of time does not

alter the analysis of whether they insure the "same risk."  Nor does the fact that the Travelers

Policies are CGL policies and the Arch policy is a products-completed operations liability policy

alter the analysis.[2] *See Fieldston*, 16 N.Y.3d at 260, 264–65 (finding that the "other insurance"

clauses applied despite the policies being different—one a commercial general liability policy

and the other an association directors and officers liability policy—and having different,

overlapping policy periods); *Travelers Prop. & Cas. Co. of Am.*, 2024 WL 4216018, at *11 (finding

that a broad understanding of "same risk" applied in a bodily injury case); *Ocean Harbor Cas.

Ins. Co. v. Great Am. E&S Ins. Co.*, 454 F. Supp. 3d 180, 182–84 (E.D.N.Y. 2020) (finding that two

policies for property damage insured the same risk despite their difference in scope); *Nat'l

Union Fire Ins. Co. of Pittsburgh, Pa. v. Hartford Ins. Co. of Midwest*, 677 N.Y.S.2d 105, 110 (N.Y.

---

[2] Defendant raises that the policies at issue are both occurrence-based, unlike the policies in *Fieldston*, asserting that the policy terms should be reviewed based on the liability coverage of the alleged property damage, because the duty to defend is not "synonymous" with determining the covered risk. (ECF No. 59, at 15, n. 3).  But New York law applies the same broad definition of "same risk" whether a policy is occurrence-based or a claims made policy. *Travelers Prop. & Cas. Co. of Am. v. Clear Blue Ins. Co.*, No. 21 Civ 4721, 2024 WL 4216018, at *10 (S.D.N.Y. Sept. 17, 2024) (quoting *Beazley Ins. Co., Inc. v. Ace Am. Ins. Co.*, 150 F. Supp. 3d 345, 357 (S.D.N.Y. 2015)) (finding that two occurrence-based policies covered the same risk because they were both triggered by the same negligence suit).  Further, this argument runs counter to the principles established under New York law for defining "same risk"—a broad standard under which policies do not have to have the same "identity in minute particular of the terms, conditions, and provisions of each policy." *Id.* (quoting *Ocean Harbor Cas. Ins. Co. v. Great Am. E&S Ins. Co.*, 454 F.Supp.3d 180, 182–84 (E.D.N.Y. 2020)).  Here, even a cursory review of the policies reveals that the Arch Policy and the Travelers Policies could possibly cover the loss.  The underlying action contains allegations of property damage arising from construction defects. (ECF Nos. 54, at 6; 56, at 1–2; 61, at 9).  Both policies cover property damage, arising from an occurrence, which both policies define as "including continuous or repeated exposure to substantially the same general harmful conditions." (ECF Nos. 53-1, at 138; 56-2, at 22).  Therefore, both the Arch Policy and the Travelers Policies could potentially cover the loss.

App. Div. 1998) (finding that two policies insured the same risk despite the fact that one had broader coverage).  Here, the Travelers Policies covers property damage caused by M&G's work, and E88 is an additional insured for the same risk.  The underlying complaint names M&G as a subcontractor whose work was potentially the cause of the water damage – the property damage.  The Arch Policy covers the same risk of property damage (albeit broader coverage than the Travelers Policies).  Although it remains to be seen whether M&G's work will be deemed the cause of the property damage, its work is implicated, triggering Travelers's duty to defend its insured and additional insured.

To be sure, if two policies' coverage periods do not overlap at all and are successive, then the other insurance clauses could not be considered.  But where, as here, coverage periods overlap, and the trigger for the coverage sought falls within that overlapping period, then the "same risk" analysis discussed above applies. *Compare Consol. Edison Co. of N.Y., Inc. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 223 (2002) (finding "other insurance" clauses did not apply when the coverage of successive policies, not policies covering the same period, were at issue), *and In re Viking Pump, Inc.*, 27 N.Y.3d 244, 266 (2016) (reiterating that other insurance clauses apply when the policies cover the same period to prevent multiple recoveries), *with Fieldston Prop. Owners Assn., Inc. v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 260–61, 263–65 (2011) (applying the policies' "other insurance" clauses, despite one policy covering a period from 2000 to 2001 and the other covering a period from 1999 to 2002), *and Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, Pa.*, 878 N.Y.S.2d 339, 344 (N.Y. App. Div. 2009) (finding that two policies covered the same risk, when then trigger for the coverage fell during a time both policies provided

coverage).  The Travelers Policies are fully subsumed within Arch Policy's period of coverage of June 26, 2014 to June 27, 2014—with an endorsement extending the coverage property damage under the products-completed operations hazard. (ECF Nos. 54, at 4; 54, at 2; 56-2, at 1).  Further, according to the Second Amended Complaint in the underlying action, E88, M&G, and others were aware of the defects and their potential liability no later than June 10, 2014. (ECF No. 57-3, ¶¶ 65–74, 106–07).  Although the Second Amended Complaint does not state when the water infiltration began, the occurrence, or "generally harmful conditions," did fall within the period of Arch and Travelers's overlapping coverage:  July 2014 to August 2015. (ECF Nos. 54, at 2; 53-14, at 22, 33).

Additionally, the analysis of whether two policies cover the "same risk" also does not change by virtue of the relationship of the insured to the additional insured.  That is, the fact that the Travelers Policies are held by a subcontractor (M&G) on the construction project, and the Arch Policy is held by E88, the sponsor/developer of the project, does not alter the analysis of whether the policies insure the "same risk." *Travelers Prop. Cas. Co. of Am. v. Wesco Co.*, 585 F. Supp. 3d 463, 470–71 (S.D. N.Y. 2022) (finding that a general contractor and subcontractor's policies covered the same risk where the general contractor's policy covered "ongoing operations" and the subcontractor's policy covered injury caused by the subcontractor's "acts or omissions").  For example, policies covering a general contractor and a subcontractor have been held to cover the "same risk," even when one policy is broader and "upstream" of another.  *Compare Id., and Travelers Prop. & Cas. Co. of Am.*, 2024 WL 4216018, at *10–12 (finding that a general contractor and subcontractor's policies covered the same risk, and the

subcontractor's insurer had a duty to defend the general contractor as an additional insured), *and Nat'l Union Fire Ins. Co.*, 677 N.Y.S.2d at 110 (finding that a general contractor's insurer covered the same risk as a policy held by a subcontractor and, as a primary policy, had the same duty to defend as the subcontractor's insurer)*, with Axis Const. Corp. v. Travelers Indemnity Co. of Am.*, No. 20 Civ 1125, 2021 WL 3912562, at *9–10 (E.D.N.Y. Sept. 1, 2021) (finding that where two policies were issued to subcontractors but covered only the risk associated with their respective work, the two policies did not insure the same risk), *and HRH Const. Corp. v. Comm. Underwriters Ins. Co.*, 11 A.D.3d 321, 323 (N.Y. App. Div. 2004) (stating that co-insurance situation did not exist for purposes of liability coverage where two subcontractors' insurance policies that named the general contractor as an additional insured, covered only the subcontractor's respective individual work).

Travelers's reliance on *New York State Thruway Authority v. KTA-Tator Engineering Services P.C.* and *New York State Urban Development Corporation v. VSL Corporation* is misplaced because both of these cases involved situations where the coverage was distinct and did not overlap. *See New York State Thruway Auth. v. KTA-Tator Eng'g Servs.*, 78 A.D.3d 1566, 1568 (N.Y. App. Div. 2012) (finding that two policies did not cover the same risk when one policy covered general liability and excluded professional liability, and the other policy covered only professional liability); *New York State Urb. Dev. Corp. v. VSL Corp.*, 563 F. Supp. 187 (S.D.N.Y. 1983) (finding that defense costs could be allocated evenly where different risks had been assumed and one of the insurers had already offered to share costs).  Here, both policies cover property damage arising out of E88's construction project, with Arch issuing a products-

14

completed operations liability policy, and Travelers issuing two CGL policies. Both policies

define property damage with the exact same language and define coverage as including "a duty

to defend the insured against any 'suit' seeking damages for . . . 'property damage.'" (ECF No.

53-1, at 124, 138). Unlike *New York State Thruway Authority* and *New York State Urban*

*Development Corporation*, the coverage of Arch and Travelers policies overlaps both in their

coverage of property damage and in the inclusion of the duty to defend against such suits.

## II. The Scope of the Duty to Defend

Not only does New York broadly define "same risk," New York law also provides for an

extremely broad duty to defend. *Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.*, 295 F.

Supp.2d 335, 338 (S.D.N.Y. 2003). The duty arises when allegations within a complaint

"arguably arise from covered events," and it is a duty that "require[s] [the insurer] to defend

the entire action." *Fieldston*, 16 N.Y. 3d at 264–65 (quoting *Town of Massena v. Healthcare*

*Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002)). An insurer with a duty to defend at least

one portion of a lawsuit is required to defend the entire lawsuit, a duty broader than the duty

to indemnify under a policy. *Fieldston*, 16 N.Y. 3d at 264; *Town of Massena v. Healthcare*

*Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 444 (2002) (finding that "[it is immaterial] that the

complaint against the insured asserts additional claims which fall outside the policy's general

coverage [meaning the liability insurance and an insurer's promises to defend] or within its

exclusory provisions" (quoting *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984) (first

alteration in original))); *see also Nat'l Cas. Co. v. Vigilant Ins. Co.,* 466 F. Supp. 2d 533, 538, 541

(S.D.N.Y. 2006) (finding that "if any of the claims asserted in the [underlying] litigation even

arguably fall outside the policy exclusion" the insurer would have a duty to defend the insured); *Travelers Prop. & Cas. Co. of Am. v. Clear Blue Ins. Co.*, No. 21 Civ 4721, 2024 WL 4216018, at *7–8 (S.D.N.Y. Sept. 17, 2024) (finding that where there was any reasonable possibility that the subcontractor's actions caused the covered bodily injury, the subcontractor's insurer had a duty to defend the subcontractor and the additional insured, the general contractor).

Therefore, when an insurer has a duty to defend at least a portion of a lawsuit, it has the obligation to defend the entire lawsuit. *See Fieldston*, 16 N.Y.3d at 265; *Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d at 444.  Here, there is no dispute that E88 is an additional insured under the Travelers Policies—M&G agreed in its contract with Tekton to name E88 as an additional insured. (ECF No. 56-5, at 6).  The Blanket AI Endorsement in the Travelers Policies states that an insured includes those whom the insured has "agreed in a written contract . . . to name as an additional insured." (ECF No. 53-1, at 212).  There also is no dispute that the Travelers Policies are triggered by the underlying lawsuit in this case.  M&G is a party to the underlying lawsuit, and its work is potentially implicated as the cause of the property damage. Indeed, Travelers has agreed to pay some defense costs while reserving its rights with respect to liability coverage.[3] (ECF No. 53-5, at 6–7).

Notably, with respect to the duty defend, when evaluating the other insurance provisions of two policies, it does not matter if the policies do not equally cover all claims in the lawsuit.

---

[3] In its motion for summary judgment, Defendants reserved their rights and defenses in regard to the duty to indemnify the insured and additional insured.  This opinion does not address liability coverage, only duty to defend coverage.  An insurer's duty to indemnify is narrower than a duty to defend. *Arch Specialty Ins. Co. v. Farm Family Cas. Ins.*, 238 F. Supp. 3d 604, 612–13 (S.D.N.Y. 2017).  Therefore, Defendants' rights to make whatever arguments they wish with respect to liability coverage are preserved.

*Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, Pa.*, 878 N.Y.S.2d 339, 343–44 (N.Y. App. Div. 2009). This standard is the same for a named and an additional insured. *Id.* Although this rule may appear unfair, it is well established in New York. *Fieldston*, 16 N.Y.3d at 265; *see also Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d at 443–44. As a result, even where some of the claims of the underlying lawsuit may fall beyond the scope of the Travelers Policies' coverage insofar as they may relate to property damage from other subcontractors who worked at the building, Travelers still has a duty to defend E88 as the additional insured under its policy because at least some of the claims implicate M&G's work and property damage stemming therefrom. *Travelers Prop. & Cas. Co. of Am.*, 2024 WL 4216018, at *7–12 (noting that the duty to defend is "measured against the possibility of a recovery," whereas indemnification is measured against the insured's actual liability); *Fieldston*, 16 N.Y.3d at 264–50 (stating that an insurer must defend the entire action when any of the claims "arguably arise from covered events").

## III. The "Other Insurance" Clauses

As noted above, if two policies cover the "same risk" and interest, then the court looks at the "other insurance" provisions to determine priority of coverage for the interest at issue, here, the duty to defend. *Allstate Ins. Co. v. Hartford Ins. Co. of the Midwest*, No. 17 Civ 7553, 2019 WL 3066491, at *3 (S.D.N.Y. July 12, 2019). Where one policy is primary and one is excess based on the "other insurance" clauses in the respective policies, the "primary insurer has the primary duty to defend on behalf of its insureds, and it generally has no entitlement to contribution" from an insurer whose coverage is excess. *Fieldston,* 16 N.Y.3d at 264 (internal

quotes and citations omitted) (quoting *Gen. Motors Acceptance Corp. v. Nationwide Ins. Co.*, 4

N.Y.3d 451, 455–56 (2005)).  This is distinct from instances where both policies are issued as

primary policies. *Gen. Motors*, 4 N.Y.3d at 457.  This principle holds true whether the entity to

be insured is the named insured or an additional insured. *Sport Rock Int'l, Inc. v. Am. Cas. Co. of

Reading, Pa.*, 878 N.Y.S.2d 339, 343 (N.Y. App. Div. 2009).

Here, the "other insurance" provision of the Travelers Policies establish Travelers as the

primary insurer for both M&G and E88.  The policies state:

> This insurance is primary . . . our obligations are not affected unless any of the
> other insurance is also primary.
>
> ***
>
> WHO IS AN INSURED . . . is amended to include as an insured any person or
> organization  . . . whom you have agreed in a written contract . . . to name as an
> additional insured, but only with respect to liability arising out of 'your work.'
>
> With respect to the insurance afforded to Additional Insureds [such as E88] the
> following conditions apply:
>
> b. This insurance is excess over any valid and collectible insurance unless [M&G]
> *have agreed in a written contract for this insurance to apply on a primary or
> contributory basis*. (ECF 56-4, at 134, 212) (emphasis added).

Under these policy provisions, the coverage of the Travelers Policies extends to the

liability that the additional insured, E88, incurred as a result of M&G's work or operations.

Further, in the M&G Contract with Tektron, M&G agreed to name E88 as an additional insured

with its Travelers Policies as "primary without right of contribution of any other insurance,

whether primary or excess." (ECF No. 56-5, at 6).  Under this written agreement and the

applicable provisions of the Travelers Policies outlined above, Travelers is the primary insurer.

Additionally, under *Fieldston* and because claims in the underlying action arguably arise out of M&G's work on the building, Travelers has the primary duty, as the primary insurer, to defend E88, one of its insureds, in the underlying action. *See Fieldston*, 16 N.Y.3d at 265 (finding that where a subcontractor's insurance covered at least one cause of action and was primary, the subcontractor's insurer had a primary duty to defend in the underlying action).

In comparison, the "other insurance" provision of the Arch Policy establishes it as "excess" stating:

> This insurance is excess over any other valid and collectible insurance that applies to any claim or 'suit' to which this insurance applies, whether such other insurance is written on a primary, excess, contingent or on any other basis (except if that other insurance is specifically written to apply excess of this insurance), and this insurance will not contribute with any other such insurance. (ECF No. 56-2, at 17–18).

In sum, because both the Travelers and Arch Policies insure E88 for the "same risk"—property damage arising from the construction/conversion project—and because the coverage dispute relates to the same interest—the duty to defend against a suit for alleged property damage—and because Arch's coverage is excess of Travelers's primary coverage, Travelers has the primary duty to defend E88 up to its policies' limits. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hartford Ins. Co. of Midwest*, 677 N.Y.S.2d 105, 110 (N.Y. App. Div. 1998); *Sport Rock Int'l, Inc.*, 878 N.Y.S.2d at 343–44.  There is no basis for requiring sharing of the defense costs, as Travelers suggests. *Sport Rock Int'l, Inc.*, 878 N.Y.S.2d at 352 (finding that where one policy was excess to another, the primary insurer had to fund the insured's defense without contribution until the primary policy was exhausted).

### IV. Damages

Where an insurer owes a primary duty to defend, that obligation begins upon notification. *Titan Indus. Serv. Corp. v. Navigators Ins. Co.*, 203 N.Y.S.3d 267, 270 (N.Y. App. Div. 2024); *Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co.*, 806 N.Y.S.2d 53, 61 (N.Y. App. Div. 2005). Travelers was put on notice of this duty to defend on August 26, 2020, when E88 sent its tender demand requesting that Travelers cover defense costs related to the underlying lawsuit. (ECF No. 54, at 6). Thus, Arch is entitled to reimbursement of defense costs it paid from the date Travelers was first notified of E88's tender: August 26, 2020. Arch calculates the amount to be $231,913.61 based on invoices it sent to Travelers.

Travelers asserts that a hearing or inquest is necessary to determine the reasonableness of the fees. This Court agrees. The Court cannot determine reasonable fees and costs at this stage insofar as no contemporaneous billing records have been provided to the Court—all that has been provided is summary information about amounts invoiced from August 2020 to November 2022 (the date Travelers began paying defense costs). *Arch Specialty Ins. Co. v. Farm Family Cas. Ins.*, 238 F. Supp. 3d 604, 616 (S.D.N.Y. 2017); *S.T.A. Parking Corp. v. Lancer Ins. Co.*, 128 A.D.3d 479, 480 (N.Y. App. Div. 2015); *see also Napoli, Kaiser, Bern, LLP v. Westport Ins. Corp.*, 295 F. Supp. 2d 335, 343 (S.D.N.Y. 2003) (stating that where a defendant is obligated to reimburse reasonable attorneys' fees and expenses, the amount "cannot be decided on summary judgment"); *Tremont Renaissance Housing Dev. Fund Co. v. Lexington Ins.*, No. 21 Civ. 2205, 2023 WL 5217987, at *5 (S.D.N.Y. Aug. 15, 2023) (finding that an inquest on damages was necessary because the fees could not be decided on summary judgment, and there was no

documentary evidence of defense costs actually incurred).  The Court notes that the Travelers Policies state that they will reimburse all expenses they incur and "all reasonable expenses incurred by the insured at our request to assist us in the . . . defense of the claim or 'suit.'" (ECF No. 53-1, at 130).  Given the lack of documentation provided to the Court and the language in the Travelers Policies, the Court cannot award attorneys' fees and expenses on this motion.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment and a finding that Travelers has a primary duty to defend is granted, and Defendants' motion for summary judgment and a ruling that the defense costs be split is denied.

Within thirty days of the date of this Opinion and Order, Arch shall make a motion for an award of its attorneys' fees and costs.  Travelers will have thirty days to oppose the motion.  Arch's reply is due fourteen days thereafter.  The Court encourages the parties to negotiate a resolution of the fees due.

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 49 and 51.

**SO ORDERED.**

DATED:     New York, New York
           April 28, 2026

_____
       KATHARINE H. PARKER
     United States Magistrate Judge

21